# LAING *v.* RIGNEY.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK

No. 79. Argued and submitted November 21, 1895.—Decided January 13, 1896.

In 1883 R. had his legal residence in New Jersey, but actually lived in New York. His wife resided in New Jersey, and filed a bill in the Court of Chancery of that State against him for divorce on the ground of adultery. The defendant appeared and answered, denying the allegations in the bill. In 1886 the plaintiff filed a supplemental bill charging other acts of adultery subsequent to the filing of the bill. The court made an order, reciting the appearance and answer of the defendant to the original bill, directing him to appear on a day named and plead to the supplemental bill, and ordering a copy of this order, with a certified copy of the supplemental bill, to be served on him personally, which was done in the city of New York. The defendant did not so appear and answer, and the further proceedings in the case resulted in a decree finding the defendant guilty of the acts of adultery charged "in the said bill of complaint and the supplemental bill thereto," granting the divorce prayed for, and awarding the plaintiff alimony. The plaintiff commenced an action in a court of the State of New York to recover alimony on this decree, whereupon the defendant, by the solicitor who had appeared for him and filed his answer to the original bill, applied for and obtained from the chancellor in New Jersey an amendment to the decree so as to make it read that the defendant had been guilty of the crime of adultery charged against him in said supplemental bill. The complaint in the New York case set forth the proceedings and decree in the New Jersey case, and alleged that the defendant had accepted the proceedings as valid, and had, after the decree of divorce, married another wife. The defendant answered, denying that the Court of Chancery in New Jersey had any jurisdiction to enter the decree on the supplemental bill, and admitting his second marriage. On the trial of the New York case, the evidence of an attorney and counsellor of the Supreme Court of New Jersey, as an expert, was offered and received to the effect that in his opinion the chancellor erred in taking jurisdiction and proceeding to judgment on the supplemental bill, without service of a new subpœna in the State, or the voluntary appearance of defendant after the filing of the supplemental bill, and that the law of New Jersey did not warrant him in so doing. The trial resulted in a judgment for defendant, which was sustained by the Court of Appeals upon the ground that the law of New Jersey and the practice of its Court of Chancery had been shown by undisputed evidence to be as stated by the expert. *Held,*

(1) That, in the absence of statutory direction or reported decision to

the contrary, this court must find the law of New Jersey applicable to this case in the decree of the chancellor, and that the remedy of the defendant, if he felt himself aggrieved, was by appeal;

(2) That the *opinion* of the expert could not control the *judgment* of the Court in this respect;

(3) That the New York courts, in dismissing the plaintiff's complaint, did not give due effect to the provisions of Article IV of the Constitution of the United States, which require that full faith and credit shall be given in each State to the judicial proceedings of every other State.

THIS was an action brought on August 4, 1887, in the Supreme Court of the State of New York against Thomas G. Rigney, on a final decree of the Court of Chancery of the State of New Jersey, whereby had been awarded to Ella L. Rigney, now Ella L. Laing, certain costs, counsel fees, and alimony, as well as a decree of divorce.

The action was tried at a special term of the Supreme Court, before a judge without a jury, and resulted in a judgment dismissing the complaint. An appeal was taken to the general term of the Supreme Court, and there the judgment of the special term was reversed. From the judgment of the general term an appeal was taken to the Court of Appeals of the State of New York, which court reversed the judgment of the general term, and affirmed that of the special term. 127 N. Y. 408. This decision of the Court of Appeals was duly remitted to the Supreme Court, and a judgment in accordance therewith was entered November 4, 1891, which, by a writ of error, has been brought to this court.

It appears that these parties were married in the State of New York on February 12, 1873, and continued to reside in that State until January, 1877, when they removed to the city of Elizabeth, in the State of New Jersey. They had two children, a girl and a boy, who were fourteen and eleven years old respectively at the time of the trial. In January, 1883, the defendant ceased to support his family, and subsequently abandoned his family.

On April 23, 1883, she, then being a resident of the State of New Jersey, filed a bill against the defendant in the Court of Chancery of that State, wherein she alleged that the defend-

ant, whose legal residence was still in the city of Elizabeth, had committed adultery with several persons on different occasions in the city of New York, and prayed for an absolute divorce and for alimony. On August 4, 1883, the defendant appeared in the suit, by his solicitors and counsel, and filed an answer denying the allegations of adultery in the bill.

On May 18, 1886, the plaintiff filed a supplemental bill in the divorce suit, wherein she alleged that the defendant had committed adultery with a person named, in the city of New York, at various times, since the commencement of the suit, and prayed that she might have the same relief against the defendant "as she might have had if the facts stated and charged by way of supplement had been stated in the original bill," and that the marriage be dissolved, and a suitable allowance made to her as alimony.

On April 29, 1887, an order was made by the chancellor of New Jersey, reciting the appearance and answer of the defendant to the original bill, the filing of the supplemental bill, the issuing of a subpœna thereon, and that the defendant, residing out of the State of New Jersey, process could not be served upon him, and directing that the defendant appear and plead, demur or answer, to the supplemental bill on or before May 18, 1887, or that in default thereof such decree be made against him as the chancellor should deem equitable and just, and further directing that a copy of the order, with a certified copy of the supplemental bill, should, within five days thereafter, be served upon the defendant personally, or, in default of such service, that notice of the order be published as therein directed. On May 4, 1887, a copy of this order and of the supplemental bill were served on the defendant personally in the city of New York.

On May 19, 1887, an order was made by the chancellor, reciting that due notice of the order of the court of April 29, directing the defendant to appear and answer the said bill on or before May 18, had been duly served, with a copy of the supplemental bill, "as in said order and by the rules of this court directed and prescribed," and that the defendant had not answered the same within the time limited by law

and said order, and referring the case to a special master to ascertain and report on evidence as to the truth of the allegation of the said bill and his opinion thereon.

On June 10, 1887, the special master reported to the court that all material facts charged in the bill and supplemental bill were true, and that a decree of divorce should be granted as prayed for.

On June 11, 1887, a final decree was rendered by the chancellor, confirming the report, granting a divorce, and awarding costs, counsel fees, and alimony. The decree found "that the said defendant has been guilty of the crime of adultery charged against him in the said bill of complaint and the supplemental bill thereto," and it was "ordered, adjudged, and decreed that the said complainant, Ella L. Rigney, and the said defendant, Thomas G. Rigney, be divorced from the bond of matrimony for the cause aforesaid, and the marriage between them is hereby dissolved accordingly, and the said parties are hereby freed and discharged from the obligations thereof." It was further adjudged and decreed that the custody of the children be awarded to the plaintiff, and that the defendant pay alimony *pendente lite* at the rate of $100 per month "from the filing of the bill up to the date of this order," and thereafter at the rate of $45 per week, together with the costs of the suit, and the sum of $150 for counsel fees.

It appears, by the record, that in January, 1888, shortly before the trial of the present case, which occurred in April, 1888, the defendant by the solicitor who had appeared for him and filed his answer to the original bill in the divorce suit, applied for and obtained from the chancellor an amendment of the decree of June 11, 1887, by striking out from the recitals thereof the words "*bill of complaint and the,*" and "*thereto,*" so as to make the recital read "and that the said defendant has been guilty of the crime of adultery charged against him in said supplemental bill." In other respects the amended decree was precisely the same as the original, and as amended was enrolled by the procurement and at the cost of the defendant.

As already stated, on August 4, 1887, Mrs. Rigney brought this action in the Supreme Court of New York upon the final decree of the Court of Chancery of New Jersey, to recover the amount awarded by the decree for alimony and costs, no part of which had been paid. The complaint, served December 3, 1887, set forth the proceedings and final decree of June 11, 1887, as they are above stated ; and it further alleged that the defendant, accepting the force of the decree of the New Jersey court, had on September 18, 1887, married one Abbie Ahern. The complaint also alleged that on or about May 4, 1887, a copy of the said supplemental bill and a copy of the order for publication thereof were duly served upon the defendant, in the city of New York, by the delivery thereof to him personally.

The defendant, in his answer, admitted " the making of the order of May 2, 1887, and the service thereof and of the supplemental bill upon him," but alleged that as said service was made in the State of New York, and not in the State of New Jersey, the Court of Chancery of New Jersey, by such service, obtained no jurisdiction to make any personal decree against him on the supplemental bill. The terms of the answer, in this particular, were as follows :

" This defendant denies that said Court of Chancery of New Jersey ever obtained jurisdiction of the person of this defendant under said supplemental bill or had any power to enter a personal decree against him, and he denies that such decree, so far as it is a personal decree against this defendant, is of any validity or effect, but he admits that said decree was effectual to dissolve the marriage status existing between him and the plaintiff."

The answer admitted the truth of the allegations of the complaint that the defendant, acting on the assumption of the validity of the decree of divorce, had, on September 18, 1887, married another woman, and that said marriage had been solemnized in the State of New Jersey and also in the State of New York.

*Mr. J. Hubley Ashton* for plaintiff in error.

*Mr. Hamilton Wallis*, for defendant in error, submitted on his brief.

I. This court must accept and cannot review findings of fact of the trial court. *St. Louis* v. *Rutz*, 138 U. S. 226; *Runkle* v. *Burnham*, 153 U. S. 216.

The trial court has found as matter of fact as follows: "That the above-named defendant was never served with a process in New Jersey under said supplemental bill, and never appeared therein or answered thereto, and the decree of the Court of Chancery of New Jersey, which was based entirely upon charges of adultery contained in said supplemental bill, did not, under the laws of that State, become binding upon said defendant personally."

The provisions of Article IV of the Constitution, which require that full faith and credit shall be given in each State to the judicial proceedings of every other State, only require that each State shall give to the judicial proceedings of a sister State the same force and effect that would be given to them in that State. Rev. Stat. § 905. It being the fact, then, that this judgment of the Court of Chancery of New Jersey was not binding upon the defendant therein personally in that State, no such force could be given to it in the State of New York.

II. The decree of the New Jersey court, so far as it sought to charge the defendant therein personally with alimony, costs, and counsel fees, was of no force or validity either in New Jersey or elsewhere, and was not a judgment protected by the provisions of the Constitution of the United States.

The case, as disclosed by the record, can be looked at in two aspects, in either of which this decision of the Court of Appeals is right:

(1) That the Court of Chancery of New Jersey had no jurisdiction over the person of the defendant that would enable it to render a valid personal judgment for a sum of money against him.

This is predicated upon the finding of the trial court: (*a*) That the decree of the New Jersey court was based entirely upon charges contained in the supplemental bill, and did not,

under the laws of that State, become binding upon the defendant personally, which fact, as the Court of Appeals has stated, was found upon uncontradicted evidence; and, also (*b*), upon the thoroughly well established principle that a personal judgment rendered by a state court in an action for money against a non-resident of the State, upon whom no personal service of process within the State was made, and who did not appear, is without validity and is not entitled to the protection of that provision of the Constitution which declares that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. *Pennoyer* v. *Neff*, 95 U. S. 714; *Freeman* v. *Alderson*, 119 U. S. 185; *Sugg* v. *Thornton*, 132 U. S. 524; *Wilson* v. *Seligman*, 144 U. S. 41; *Scott* v. *McNeal*, 154 U. S. 34.

That the finding of the trial court in this respect, and the ruling of the Court of Appeals is correct, is fully supported by the proceedings of the New Jersey court. The taking of the bill *pro confesso;* the subsequent proceedings before the master without notice to the defendant and without his presence, and the failure to serve notice of the proceedings upon the defendant's solicitors who represented him under the original bill, can only be explained or supported upon the theory of the findings, that the supplemental bill was to all intents and purposes a new and independent proceeding. And the failure to bring to trial the issues raised by the original pleadings, or to attempt to establish any of the allegations contained in the original bill, conclusively establishes the fact that those allegations were not susceptible of proof, and that no decree whatever could be entered against the defendant based upon them, and that the decree, as it itself recites, was one wholly dependent for its validity upon the allegations of the supplemental bill.

(2) But if this position is not well taken, if the appearance of the defendant to the original bill can be held in any sense to be a general appearance in the suit, so as to give the Court of Chancery jurisdiction to enter and enforce a personal decree against him therein, whether under the original or the

supplemental bill; then, too, the judgment sought to be enforced in this action is invalid.

The Constitution of the United States provides, Fourteenth Amendment : "Nor shall any State deprive any person of life, liberty or property without due process of law."

Due process of law means not only the service of a subpœna or other original process, but the right of a defendant to be heard in his own defence. It would certainly be a perversion of justice if, after a defendant had been brought into court by process and had interposed a pleading which raised an issue of fact, the plaintiff could proceed with the hearing of the cause in the absence of the defendant, without notice to him of such hearing, and without giving him an opportunity to controvert the evidence on the part of the plaintiff. Any such procedure would clearly not be the due process of law required by the Constitution. As was said by the New York Court of Appeals in *Stuart* v. *Palmer*, 74 N. Y. 183, 191, "It may, however, be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard and to defend, enforce and protect his rights. *A hearing or opportunity to be heard is absolutely essential.* We cannot conceive of due process of law without this." See also the cases there cited, and, to the same effect, *Scott* v. *McNeal*, 154 U. S. 34.

But in the case under consideration this opportunity was denied to the defendant. Notwithstanding his appearance and answer — if both bills can be held to be parts of one proceeding — the Court of Chancery expressly directed that the bill should be taken *as confessed*, and that the complainant should proceed with his cause *ex parte*. So that, by the express direction of the court, the defendant was deprived of his right to be heard in his own behalf. But this provision of the Constitution is a restraint equally upon the executive, legislative, and judicial branches of the government. *Murray's Lessee* v. *Hoboken Land and Improvement Co.*, 18 How. 272; *Scott* v. *McNeal*, 154 U. S. 34; and therefore the judgment of the court, having been rendered without such due process of law, was and is a nullity.

So that in whichever way we view this case — whether we consider the supplemental bill as an independent proceeding or as part of the original suit — the judgment sought to be enforced was rendered without that due process of law which is necessary to give it validity.

III. The defendant was in no way estopped or precluded from interposing this defence in this action.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The Federal question presented by this record is whether the judgment of the New York courts, in dismissing plaintiff's complaint, which sought to enforce a final decree of the Court of Chancery of New Jersey, gave due effect to the provisions of Article IV of the Constitution of the United States, which require that full faith and credit shall be given in each State to the judicial proceedings of every other State.

The record discloses, and it is conceded, that, upon its face, the decree of the Court of Chancery of New Jersey purports to be a final decree, granting the divorce, and adjudging the payment of the costs and alimony to recover which this suit was brought.

But the defendant seeks to avail himself of the well settled doctrine, that it is competent for a defendant, when sued in the court of his domicil on a judgment obtained against him in another State, to show that the court of such other State had not jurisdiction to render the judgment against him. To sustain this position in this court the defendant relies upon the sixth finding of the trial court, which was as follows : "That the above named defendant was never served with process in New Jersey under said supplemental bill, and never appeared therein or answered thereto, and the decree of the Court of Chancery of New Jersey, which was based entirely upon charges of adultery contained in said supplemental bill, did not, under the laws of that State, become binding upon said defendant personally."

It is undoubtedly true, as claimed by the defendant in error,

that if the judgment of the Court of Chancery of New Jersey was not binding upon the defendant therein personally in that State, no such force could be given to it in the State of New York; and it is contended that, as by the sixth finding, above recited, it is found that the decree was not binding personally on the defendant, under the laws of New Jersey, the Court of Appeals of the State of New York and this court must accept and cannot review such finding. And upon that finding the Court of Appeals said :

"The trial court found upon undisputed evidence that, under the law of New Jersey and the practice of its Court of Chancery, jurisdiction to render a judgment for alimony and costs on the supplemental bill, enforceable in that State against the defendant, could not be acquired without service of a new subpœna in the State, or by his appearance in the action subsequent to the filing of the supplemental bill. . . . Service within the State was found to be, under the law and practice of the Court of Chancery of New Jersey, an indispensable prerequisite to the rendition of a personal judgment." *Rigney* v. *Rigney*, 127 N. Y. 408, 415.

The plaintiff duly excepted to the findings and conclusions, and it is well settled that exceptions to alleged findings of facts because unsupported by evidence present questions of law reviewable in courts of error.

The only evidence adduced by the defendant to sustain his side of the issue as to the law in the State of New Jersey was the testimony of Daniel M. Dickenson, an attorney and counsellor at law of the Supreme Court of the State of New Jersey, and who had been employed for some years as chief clerk in the chancellor's office. This witness testified that, under the law and practice of New Jersey, a supplemental bill was, as to the matter not alleged in the original bill, an independent proceeding, and that, if there were no service of the subpœna issued under the supplementary bill and no appearance, the defendant would, as to the new matter contained in the supplementary bill, not be in court; but the same witness testified that there was no statute of New Jersey in terms requiring the issuing of a subpœna on any supplemental bill, nor was

he able to specify any New Jersey statute which, in his opinion, required such process to be issued on a supplemental bill in any suit in the Court of Chancery of that State, nor could he cite any judicial decision in that State holding such process to be necessary. He also testified that "by the practice in New Jersey, if the decree contains the fact that he was served, *prima facie* he was; if it does not, why, then there is no decree binding him personally; but so long as the decree stands against him in our State, why, of course, it is a good decree." He also stated that the statute conferring jurisdiction upon the Court of Chancery is in the revision of the New Jersey laws under the head of "Chancery Acts."

The plaintiff put in evidence so much of the revision as related to the Court of Chancery, and which disclosed no provision whatever requiring a new subpœna to be issued on any supplementary bill filed in the Court of Chancery, but it does contain provisions whereby orders directing absent defendants, whether within or without the State, to respond to the bill, and, on proof of personal service of such order, the chancellor may proceed to take evidence to substantiate the bill, and to render such decree as the chancellor shall think equitable and just, and that any defendant upon whom such notice is served shall be bound by the decree in such cause as if he were served with process within the State. New Jersey Rev. Stat. 1877.

As the defendant's only expert witness testified that the rules and regulations of the Chancery Court were to be found in the statutes, it would seem at least questionable whether his opinion, upon the question as to how and when that court acquires jurisdiction over a defendant in an original or supplemental bill, was competent evidence in the case. At all events, we do not read his testimony as alleging that where the court has already acquired jurisdiction over a defendant by personal service within the State, and then, after appearance by counsel, absents himself from the State, and when a supplemental bill is filed in the suit, service on him of a new subpœna within the State is an indispensable prerequisite to the rendition of a personal decree on such supplemental bill.

And when asked directly by defendant's counsel whether such a decree would be effectual in New Jersey to bind the defendant personally, he answered, "I have never known any case decided in New Jersey upon that point."

In the absence of any statutory direction on the subject and of any reported decision of the Supreme Court of that State, we are justified in finding the law to be as declared in the very case in hand, where the chancellor of the Chancery Court of New Jersey has entered a final decree based upon an original bill, the process under which was served upon the defendant within the State, and upon a supplemental bill, a copy of which with a rule to plead was served upon the defendant without the State. So long as this decree stands it must be deemed to express the law of the State. If the defendant deemed himself aggrieved thereby his remedy was by an appeal.

In *Cornett* v. *Williams*, 20 Wall. 226, 249, where, in a Circuit Court of the United States, an attempt was made to destroy the effect of a judgment rendered by a county court by alleging error, this court said : "The power to review and reverse the decision so made is clearly appellate in its character, and can be exercised only by an appellate tribunal in a proceeding directly had for that purpose. It cannot and ought not to be done by another court, in another case, where the subject is presented incidentally, and a reversal sought in such collateral proceeding. The settled rule of law is that jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud. Every intendment is made to support the proceeding. It is regarded as if it were regular and irreversible for error. In the absence of fraud no question can be collaterally entertained as to anything lying within the jurisdictional sphere of the original case. Infinite confusion and mischiefs would ensue if the rule were otherwise. These remarks apply to the order of sale here in question. The county court had power to make it, and did make it. It is presumed to have been properly made, and the question of its

propriety was not open to examination upon the trial in the Circuit Court. These propositions are sustained by a long and unbroken line of adjudications in this court. The last one was the case of *McNitt* v. *Turner*, 16 Wall. 366."

The principle was very clearly expressed by Mr. Justice Baldwin in *Voorhees* v. *Bank of United States*, 10 Pet. 449, 474: "The line which separates error in judgment from the usurpation of power is very definite; and it is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case it is a record importing absolute verity; in the other, mere waste paper; there can be no middle character assigned to judicial proceedings, which are irreversible for error. Such is their effect between the parties to the suit; and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution."

This rule is recognized in the State of New York. In *Kinnier* v. *Kinnier*, 45 N. Y. 535, 542, it was said: "A judgment of a sister State cannot be impeached by showing irregularities in the form of proceedings or a non-compliance with some law of the State where the judgment was rendered relating thereto, or that the decision was erroneous. Jurisdiction confers power to render the judgment, and it will be regarded as valid and binding until set aside in the court in which it was rendered."

Even if, therefore, it was the *opinion* of Mr. Dickenson, the defendant's expert witness, that the chancellor of New Jersey erred in thinking that jurisdiction over the defendant personally was conferred by the service on him within the State of the subpœna under the original bill, and by the service on him, without the State, of a copy of the supplemental bill and of a rule to plead, such opinion does not support the finding of the trial court that, under the laws of the State of New Jersey, the decree sued on and offered in evidence was not binding upon the defendant personally. The opinion of the chancellor differed from that of the witness, and, what is more im-

portant, his *judgment* was that, under the laws and practice of the State of New Jersey, the defendant was in his court, subject to its jurisdiction and bound by its decree.

It is contended on behalf of the plaintiff in error that, even if the defendant could not have been personally bound by a decree based on the supplemental ˙ bill because a subpœna thereunder had not been served upon him within the State of New Jersey, yet that, as the defendant, after the entry of such a decree against him, appeared in the New Jersey court by counsel, and procured a modification of the decree, he thereby subjected himself to the decree as amended.

It is also claimed that, as he admits that he acquiesced in and ratified the decree, by accepting that portion thereof which relieved him from the contract of marriage, he cannot be heard to impeach the decree in dealing with the change thus caused in his marital relations by subjecting him to the payment of costs and alimony.

ˈ The fact that the defendant appeared and procured an amendment of the decree and its enrolment in its final form, took place after the bringing of the present suit, and, to form the basis for the contention that he thereby subjected himself to the decree as amended, such fact ought, perhaps, to have been made to appear by an amended or supplemental petition. But as the amended decree was put in evidence by the defendant himself, and was treated by the New York courts as the final decree, whose effect they were considering, we shall regard the amended decree as the real ground of the plaintiff's action.

As the appearance of the defendant was not for the purpose of objecting to the jurisdiction of the court, but was rather in the nature of an appeal to its jurisdiction, and as the objection successfully made to the decree as originally enrolled was restricted to one of its recitals, and did not attack the decree in the respect that it adjudged that he should pay the costs and alimony, there is force in the view that he thereby waived any right to further object to the decree. At all events, he could not successfully attack the decree collaterally in a court of different jurisdiction, but his remedy, if any he had, would be by way of appeal.

It is claimed by the defendant in error that to hold him personally bound by the decree for the payment of money would, in the circumstances of the present case, deprive him of his property without due process of law. This claim is based upon the assumption that the defendant had no hearing or opportunity to be heard.

As this record discloses that the defendant was served with process under the original bill, and appeared by counsel, and made answer, and was personally served with a copy of the supplemental bill and with an order to plead, and, after permitting himself to be defaulted, did appear by counsel and procured the vacation of the original decree and the enrolment of the decree amended in accordance with his own motion, it may fairly be said that he both had an opportunity to be heard and was heard. His appearance by counsel under the supplementary proceedings was not to object to the jurisdiction of the court, but to effect a change in the recitals of the decree on non-jurisdictional grounds. As before stated, we do not deem it necessary to consider the contention on behalf of the plaintiff in error that by such appearance the defendant estopped himself from alleging error in the decree when thus amended, but we think he certainly precluded himself from now contending that he has been deprived of his property within the meaning of the Federal Constitution.

As, then, the evidence of the defendant did not avail to show want of jurisdiction on the part of the Chancery Court of New Jersey to render the decree in question, and as it was admitted that the decree remained wholly unpaid, the plaintiff below was entitled to judgment.

*The judgment of the Supreme Court is hereby reversed, and the case is remanded to the Supreme Court for further proceedings not inconsistent with the opinion of this court.*