ANNIE E. TORRENS, petitioner-appellant,

*v.*

ROBERT K. TORRENS, defendant-respondent.

[Submitted November 21st, 1922.   Decided March 5th, 1923.]

1. In order to prove adultery by circumstantial evidence two facts must be established ; a criminal disposition or desire in the mind of both the defendant and his *particeps criminis*, and an opportunity to commit the crime.

2. Where the defendant, a man who has separated from his wife, the petitioner, by mutual consent, takes up his abode in a flat with his father and aunt who employ as housekeeper a woman not living with her husband, and after the death of both the father and aunt, the defendant continues to maintain his home in the flat and employs the same housekeeper and they both continue to live on there alone together, and there is no proof of any desire or inclination on the part of either to commit adultery.—*Held*, that, although there was an abundance of proof of opportunity to commit the offence, nevertheless, the lack of proof of any desire or inclination to do so would preclude the petitioner from obtaining a divorce on the ground of adultery.

3. To establish adultery by inference, the circumstances from which the inference is drawn must be such as would lead the guarded discretion of a reasonable and just man to the conclusion of guilt.

4. If the circumstances, taken singly and together, admit of two interpretations, that which favors innocence should be adopted.

On appeal from a decree of the court of chancery dismissing a petition for divorce.

*Mr. Philip J. Schotland,* for the petitioner-appellant.

*Mr. Clyde D. Souter,* for the defendant-respondent.

The opinion of the court was delivered by

ACKERSON, J.

This is an appeal from a decree of the court of chancery dismissing a petition for divorce *a vincula* filed by the wife against her husband charging him with living in adultery with his housekeeper at his residence in the city of Bloomfield.

There is no direct evidence in the case of the commission of the act of adultery, and the charge is sought to be established circumstantially, which, under the well-recognized rule, can only be done where two facts are established,—a criminal disposition or desire in the mind of both the defendant and his *particeps criminis,* and an opportunity to commit the crime. *Berckmans* v. *Berckmans, 16 N. J. Eq. 143,* and *Black* v. *Black, 30 N. J. Eq. 228.*

The petitioner and defendant were married in 1906 and lived together until July, 1911, when they separated by mutual consent, the husband eventually, in 1916, going back to live at the home of his father, who, with defendant's aunt, were living in a flat on Dodd street, in Bloomfield. The father and aunt being well advanced in years, defendant's niece, with their consent, in September, 1917, procured the co-respondent, a married woman who was not living with her husband, and who was a friend of the family, to go to the flat and keep house for them, and a little while later the co-respondent's mother, a woman about eighty years of age and in feeble health, was brought from an almshouse by the defendant to live in the flat so that she might be near her daughter. In 1917, defendant's father died in the flat, and

about two years later his aunt died there and a little later the housekeeper's mother died there also, and the defendant, who was then about fifty years of age, thereafter continued to maintain his home there and retained the same housekeeper, and they have both continued to live on there by themselves ever since, against the protests of the petitioner and some of defendant's relatives, and the reason given by the defendant for so doing is that he wanted a home of his own and did not want to be a lodger in another's home.

Aside from the fact that the defendant and co-respondent have lived together by themselves in this flat for approximately two years under the circumstances just related, there is very little evidence which sheds any light upon the relations existing between them. None of the witnesses testified to having seen any manifestations of affection between them nor any improper conduct on the part of either. It does appear from the evidence that defendant wrote a letter to his wife on June 13th, 1919, from which the following extract is taken, viz.: "It has seemed to me daily that I ought not to be living with another man's wife, on the other hand I am going to have a home and not board. If the thought has occurred to you that you ought not to allow it, or that I ought to take you out of Bamberger's store, then you must think of my income as $20 per week. Can it be done with happiness, etc.," but when this excerpt is read in conjunction with the context of the letter, it will at once appear that he had therein informed his wife that his housekeeper's mother was then living with them in the flat; that she was eighty years old, and in rapidly failing health, and could not live long, and keeping in mind that he was writing to his wife who would be the last person to whom he would make any admission of improper conduct, it seems to us that the most unfavorable interpretation that could be put upon the above quoted language is that the defendant realized that maintaining a home for himself in this flat with a house-keeper who was separated from her husband, might be considered unconventional, but the language was clearly not

used in the sense of implying guilty conduct. There is also evidence of two letters written by the housekeeper to the petitioner referring to letters received by the defendant from petitioner regarding support for their daughter, and the suggestion is made that this tends to show the intimate relations existing between defendant and his housekeeper because it is inferred that he permitted her to reply to the letters he received from his wife and thus champion his cause, but there is nothing in this suggestion because, in the first place, there is nothing whatever in the housekeeper's letters to indicate any meretricious relation between the defendant and herself, and in the second place there is no evidence that the defendant ever saw them or knew that they had been written, and in fact they both say that the defendant did not know it. There is also evidence that the defendant only paid the co-respondent $8 per month for her services, and that sometimes, when he could not meet all the household expenses, she used some of her own money for that purpose, but she was getting her board and lodging and she had for some time been receiving about $25 a month from her father-in-law, but in any event, the fact that the compensation she received from the defendant was small would not justify the conclusion that their relations were meretricious.

A careful reading of all the testimony leads inevitably to the conclusion that the only apparent ground for the charge of adultery against the defendant, is the fact that he and the housekeeper have been living together by themselves in the same apartment, but considering the circumstances under which it came about, we cannot say that they were such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt, which was the standard laid down in the case of *Hurtzig* v. *Hurtzig, 44 N. J. Eq. 329;* affirmed, *45 N. J. Eq. 869,* where the court also held that "the judgment must not be rash and intemperate, moving upon appearances that are equally capable of two interpretations. If the circumstances, taken both singly and together, reasonably admit of two interpretations, that interpretation which favors

innocence should be adopted." The defendant had the right to continue to maintain his home in the flat after the death of his relatives, and it was necessary for him, in order to live there comfortably, to have somebody to keep the house for him. It was natural, under the circumstances, that he should retain the services of the same housekeeper who had been originally employed by his parent. The fact that he was a married man who was separated from his wife by mutual consent, and that the housekeeper was a married woman whose husband was not living with her, seems to us to have but little bearing upon the question before us. She was entitled to earn her living and he was entitled to keep his home.

We agree with the vice-chancellor who heard the case in the court below, that there is an abundance of proof of opportunity to commit adultery, but that the case is absolutely barren of proof of any desire or inclination to commit the offence, and the excess of proof of the one element cannot supply the deficiency in the other. They were perhaps defying convention and inviting scandal, but we cannot, from the mere fact of their living alone together in the same apartment, without any proof of illicit desire on the part of either, infer that their relations were criminal, and there is nothing in the proofs that leads us to believe that their relations were meretricious, and we therefore conclude that the decree of the court of chancery must be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, BLACK, KALISCH, GARDNER, ACKERSON, VAN BUSKIRK—10.

*For reversal*—KALISCH, WHITE—2.