The parties were married in 1918, and the wife filed her petition, alleging adultery, in August, 1923. It is clear that the marriage was not a happy one from the beginning, and the express act of adultery is alleged to have occurred on the 5th day of August, 1923. The petitioner swears that prior to that time the defendant had not only begun to neglect her and remain out of the home nights (on one occasion he failed to return until the morning), but was associating with an other woman named Alice Wood. The specific act of adultery relied upon, as already said, was on the night of August 5th, 1923, when the defendant and the other woman were seen going into an apartment house in Jersey City, where they each were lodgers of a woman who rented two apartments therein and sublet the individual rooms as a means of livelihood. The defendant rented a room in one of the apartments and Alice Wood rented a room in a different apartment. *Page 202 
After watching these two enter the side entrance of this building, a light was seen to appear in the bedroom of the woman, which was extinguished about midnight. The petitioner left the neighborhood to return to her home at a late hour, and the suspected individuals were kept under surveillance by two private detectives until about nine o'clock on the following morning.
One of the detectives gained admission to the building, and after many hours of waiting saw the suspected man and woman leave the latter's bedroom at nine-five on the morning of August 6th. Inasmuch as the detectives swear that they kept a watch on the woman's bedroom for, at least, four hours, it is clear that, if what they say be true, this man and woman had not occupied her sleeping apartment for any innocent purpose.
My difficulty with the case is the same that actuated the special master in his report, namely, the weakness of the source of evidence. All the cases on the subject from Cane v. Cane,39 N.J. Eq. 148, down to date, comment on the close scrutiny always to be given the testimony of paid detectives unless strongly corroborated. In the case at bar the only evidence of adultery, except something to be noticed presently, flows from the lips of men whose every interest is in favor of making out the petitioner's case. Anyone with the slightest experience with this class of witnesses realizes the wisdom of the rule dealt with in the cases to which I have referred. It is clear that if a decree were to be entered in favor of the petitioner in this suit it would operate as a precedent that would menace every woman in the State of New Jersey whose husband had tired of her, because it would only require the services of one or more of that class of detectives of unscrupulous character. I do not mean to say that testimony of detectives, inherently probable and capable of some corroboration, is to be entirely disregarded, but in this case there is not a disinterested witness, a circumstance, a document, or any other proof that in the slightest degree lends to the testimony of the professional detectives the slightest support. Although the wife has testified to a most *Page 203 
abandoned course of conduct on the part of the suspected individuals, there is not another person produced who has ever seen conduct of the slightest incriminating nature between them. No love notes or other indicia of illicit conduct is produced. Unfortunately, the testimony of the petitioner, except where credibly corroborated, is insufficient. Garcin v. Garcin,62 N.J. Eq. 189.
The transcript of the depositions shows that the taking of proofs before the special master commenced on December 3d 1923, and after the examination of six witnesses was continued from time to time until June 6th, 1924, when a most amazing attempt was made to supply the deficiencies in the proofs by producing the defendant himself as a witness in the petitioner's behalf, who thereupon, with the utmost effrontery, testified in a most suspicious manner to all the facts needed to convict him. Without the slightest difficulty, her solicitor secured his oath to having remained many times with Alice Wood in her bedroom all night immediately after being warned by the petitioner's solicitor himself that it was his constitutional right to refuse to answer. Many of his answers were given with the always-suspicious circumstance of argumentative reasons to support them, and, finally, when interrogated by the master, he frankly admitted that it would suit his desires if his wife should be successful in divorcing him. Our marriage laws would degenerate into the merest farce if the marital ties are to be severed upon proofs such as are found in this case. It is clear that the marriage has been an unhappy one; the parties have sickened of their bargain, and a most desperate but unskillful effort has been made by them to release themselves in a case that should never have been commenced.
The exception will be overruled. *Page 204