GERBRAND SMITH, petitioner,

*v.*

HELEN SMITH, defendant.

[Decided July 16th, 1943.]

*Mr. Vincent A. Pernetti, Messrs. Ward & McGinnis* and *Mr. Louis C. Friedman,* for the petitioner.

*Messrs. Feder & Rinzler,* for the defendant.

STAFFORD, A. M.

On May 1st, 1942, the petitioner filed a petition for divorce, wherein he accused the defendant of committing adultery with unknown persons on two different occasions.

The defendant, a minor, for whom a guardian had been appointed, answered denying the charges. She also counter-claimed, charging petitioner with extreme cruelty.

Petitioner denied allegations in counter-claim; issue was joined and the matter came on for final hearing.

On November 9th, 1942, after hearing began, petitioner filed a supplemental petition charging defendant with committing adultery on July 9th, 1942, with one William Brzskain. His correct name is William Brzoska.

Defendant answered denying the charges. She furthermore pleaded the following separate defenses: (1) Petitioner was guilty of extreme cruelty prior to these alleged acts of adultery; (2) therefore, petitioner came into court with unclean hands; (3) petitioner was guilty of prenuptial intercourse. Defendant repeated her counter-claim charging the petitioner with extreme cruelty.

The hearings on the merits consumed four or five days. At the close of the whole case the court instructed the defendant's solicitor to confine his argument, in commenting on

petitioner's case, to the act of adultery alleged in the supplemental petition, as the court was not satisfied, from the evidence, that the defendant was guilty of the acts of adultery charged in the original petition.

The defendant's solicitor then moved for a dismissal of the supplemental petition on the ground that the alleged act of adultery committed by the defendant after the filing of the original petition could not be pleaded by supplemental petition; that such pleading was irregular and this court could not base a decree on such pleading; that it was the duty of the petitioner to seek the court's permission to dismiss the original petition and then set up these different causes of action in an entirely new petition.

It is generally understood that a supplemental bill is an addition, to the original bill, of something happening since the filing of the original bill. The new matter should be in aid of, in support of, have some relation to, have a direct connection with, the matters and things pleaded in the original bill.

In divorce cases it seems that leave should not be granted to file a supplemental petition for the purpose of charging acts of adultery committed subsequent to the filing of the original divorce petition. *Lutz* v. *Lutz*, 52 *N. J. Eq.* 241; 28 *Atl. Rep.* 315; *Milner* v. *Milner*, 2 *Edw. Ch.* (*N. Y.*) 114; *Schwab* v. *Schwab*, 96 *Md.* 592; 54 *Atl. Rep.* 653; *Renner* v. *Renner*, 177 *Md.* 689; 12 *Atl. Rep.* (*2d*) 195; *Carter* v. *Carter*, 139 *Md.* 265; 114 *Atl. Rep.* 902; *Kirkwood* v. *Kirkwood*, 165 *Md.* 547; 170 *Atl. Rep.* 180.

There are exceptions to this rule. For instance, where the new matter will corroborate acts occurring before the filing of the original petition. And again where the new matter will remove the effect of a condonation. *Lutz* v. *Lutz, supra; Carter* v. *Carter, supra; Wagner* v. *Wagner*, 130 *Md.* 346; 100 *Atl. Rep.* 364.

While not a divorce case, to the same effect is *Szelewa* v. *Windeler*, 110 *N. J. Eq.* 299; 159 *Atl. Rep.* 677.

The prevailing rule seems to be, therefore, that an alleged act of adultery committed subsequent to the filing of the original divorce petition cannot be pleaded by way of a

supplemental petition. It is a new cause of action and cannot be grafted upon the original action. The existing suit for divorce must be dismissed by consent of the court, and an entirely new action instituted.

Nevertheless such an irregularity can be waived, and this is what happened in this case.

Rule 55, Court of Chancery, provides: "Supplemental pleadings showing matters arising since the original pleadings, or suit begun, may be filed by either party by leave of court and upon terms."

To file a supplemental bill without leave of court first obtained is irregular. *Allen* v. *Taylor,* 3 *N. J. Eq.* 435.

In this case no application was made for, and the court did not grant, leave to file a supplemental petition.

This irregularity in the pleading was cured and waived by the voluntary appearance of the defendant when she answered, filed her counter-claim and contested the case on its merits for several days. *Allen* v. *Taylor, supra.*

If the defendant wished to take advantage of this irregular pleading, since demurrers are abolished, it was her privilege and duty to move to strike. Instead she chose to answer and defend.

The general rule is that a party will not be permitted to demur after he has pleaded to the merits. 31 *Cyc.* 275. And demurrers come too late after the time for filing them has expired. *Idem* 274. *Hand* v. *Hand,* 60 *N. J. Eq.* 518 (at *p.* 521) ; 46 *Atl. Rep.* 770; *Tipton* v. *Randall,* 87 *N. J. Eq.* 387; 101 *Atl. Rep.* 204; *Baird* v. *Board, &c., South Orange,* 108 *N. J. Eq.* 91 (at *p.* 112) ; 154 *Atl. Rep.* 204; *Wemple* v. *B. F. Goodrich Co.,* 125 *N. J. Eq.* 109 (at *p.* 114) ; 4 *Atl. Rep.* (2d) 510; *Business Men's, &c., Assn.* v. *Tumulty,* 13 *N. J. Mis. R.* 638 (at *p.* 640) ; 180 *Atl. Rep.* 772.

It is true that in *Farrow* v. *Farrow,* 70 *N. J. Eq.* 777; 60 *Atl. Rep.* 1103, and *Laing* v. *Rigney,* 160 *U. S.* 531; 16 *S. Ct.* 366, supplemental bills were filed charging adultery subsequent to the filing of the original bills. In neither case, however, was any attempt made to cure this irregularity. In the *Farrow Case* no demurrer was filed and the court heard the case on its merits. In the *Laing* v. *Rigney Case* the

defendant did not answer the supplemental bill and filed no demurrer. But he did appear by solicitor and through his efforts the decree was amended.

It seems to be the well settled rule in New Jersey that where the parties have joined issue without raising a jurisdictional question whether the case presented by the pleadings is one which the court of equity will now exercise its jurisdiction, and the case has gone to final hearing, and the proofs have been taken, it is too late to raise the question. The court will consider that the parties have in effect stipulated that facts exist which make the exercise of jurisdiction appropriate. *Varrick* v. *Hitt*, 66 *N. J. Eq.* 442; 57 *Atl. Rep.* 406; *Van Horn* v. *Demarest*, 76 *N. J. Eq.* 386; 77 *Atl. Rep.* 354; *affirmed*, 77 *N. J. Eq.* 264; 77 *Atl. Rep.* 354.

To the same effect is *Pridmore* v. *Steneck*, 122 *N. J. Eq.* 35 (at *p.* 38); 191 *Atl. Rep.* 861.

It is needless to state that this court did have jurisdiction of both parties and subject-matter.

Therefore I am compelled to find that although the filing of the supplemental petition was irregular such defect was waived by the defendant when she not only failed to move to strike out the supplemental petition but filed her answer and counter-claim and also took testimony for several days on the merits of the case. It was too late at the close of the whole case to take advantage of this irregular pleading.

The evidence introduced by the petitioner in an attempt to prove the allegations in the original petition is not at all satisfying and convincing. The court entertains grave doubt that the defendant is guilty of these charges. That doubt must be resolved in favor of the defendant.

The court is not perplexed with doubt, however, as to the charge made in the supplemental petition.

There is plenty of testimony in the case from which the court has no great difficulty in concluding that the defendant did enjoy the company of men other than her husband.

The defendant did not deny that she and her girl friend were out riding with Leonard Mesi and Walter Malkowitz. In fact they stopped at a tavern to celebrate Leonard Mesi's birthday, and that both boys kissed her. Again while deny-

ing the adultery of July 9th, 1942, she did admit that she went riding with William Brzskain on that evening and was sitting in a parked automobile with him when the petitioner and his witnesses came upon her.

The testimony of the petitioner and his witnesses, Norma Kopp, investigator, Sol Wasser, chauffeur for Norma Kopp, and Elizabeth Murphy, sister of the petitioner, establishes the following facts: On July 9th, 1942, in the evening the defendant boarded a Ford automobile. She sat in the front seat with the driver, William Brzoska, while a passenger, characterized as a cripple, sat in the back seat. They stopped and knocked out a few golf balls and then drove to Webber's tavern. From this place the passenger was taken home, and the defendant continued in the auto with William Brzoska. They hugged and kissed each other. The automobile was finally stopped and parked on Shaw Street, Cherry Hill, East Paterson. After waiting ten or fifteen minutes, petitioner and his witnesses came up to the parked automobile, and with the aid of the large automobile lights, saw William Brzoska getting off the defendant. His pants were open and her dress was up.

The petitioner said to the defendant, "You've been committing adultery with this man." She answered, "What of it?"

The defendant testified that her brother introduced her to William Brzoska a year before the incident in question; that she accepted his invitation to go riding and finally arrived in the neighborhood of some military barracks in Cherry Hill, East Paterson. The automobile was parked one-half block away. She and William Brzoska were seated in the parked automobile about five minutes when the petitioner and his witnesses came upon her. She denied all questionable actions and all charges of misconduct.

The co-respondent was called by the petitioner. At his request, the court protected him from incriminating evidence. He did, however, testify as follows: he saw the defendant but once and that was on July 9th, 1942; that she took an automobile ride with him; that he parked the automobile at the Cherry Hill development; no homes were nearby;

they were there fifteen or twenty minutes and he guessed he kissed her. He was leaning over her.

That William Brzoska asked the court to excuse him from giving incriminating answers does not strengthen the petitioner's case. But the testimony that he did give undoubtedly is corroborative of petitioner's cause, and must be considered by the court.

Likewise with some of the petitioner's witnesses, who are paid investigators. This testimony should be carefully scrutinized and cautiously accepted. Subject to that test and guard, it is not to be disregarded, and if belief in its truth is induced by attending circumstances, it must be given due weight. *Rupp* v. *Rupp*, 97 *N. J. Eq.* 201; 126 *Atl. Rep.* 862; *Cummings* v. *Cummings*, 109 *N. J. Eq.* 637; 158 *Atl. Rep.* 537; *Janner* v. *Janner*, 113 *N. J. Eq.* 110; 166 *Atl. Rep.* 95; *Bemis* v. *Bemis*, 114 *N. J. Eq.* 53, 54; 168 *Atl. Rep.* 295.

I am not unmindful of the rule that if defendant's actions can be construed to be innocent as well as guilty, I would be compelled to follow the conclusion of innocence rather than that of guilt. *Berckmans* v. *Berckmans*, 16 *N. J. Eq.* 122 (at *p.* 140); *Grundy* v. *Grundy*, 92 *N. J. Eq.* 687; 114 *Atl. Rep.* 552; *Torrens* v. *Torrens*, 94 *N. J. Eq.* 480; 120 *Atl. Rep.* 189; *Schwartz* v. *Schwartz*, 104 *N. J. Eq.* 420; 146 *Atl. Rep.* 57.

And, if I entertained doubt about defendant's guilt, she would be entitled to the benefit of that doubt. *Danielson* v. *Danielson*, 127 *N. J. Eq.* 41 (at *p.* 45); 11 *Atl. Rep.* (2d) 23.

With the testimony that the witnesses saw a man get off the defendant on the evening of July 9th, 1942, the proofs also tended to establish that the defendant had both the inclination and the opportunity to commit adultery. The law is well settled on this point. The evidence must be convincing; its probative quality must support the charge; it must satisfy and leave the careful and guarded judgment of the court free from conscientious perplexing doubts as to whether the charge was proved. *Lotz* v. *Lotz*, 129 *N. J. Eq.* 476; 19 *Atl. Rep.* (2d) 675, and cases cited therein; *Hight* v. *Hight*, 129 *N. J. Eq.* 15; 17 *Atl. Rep.* (2d) 802.

I am not disturbed by perplexing doubts. On the contrary, I feel that the evidence in the cause warrants the guarded judgment of this court to come to the conclusion that the defendant is guilty as charged in the supplemental petition.

The defendant, in her counter-claim, charges the petitioner with acts of extreme cruelty, commencing about June, 1941, and continuing during the months of July, August and September, 1941. Many of these accusations are entirely lacking in corroboration.

The defendant called as her corroborating witnesses, on her counter-claim, her mother, sister and two brothers. The court was not impressed with their testimony. Not that this mere relationship rendered such testimony inherently improbable or unworthy of belief. Although such a situation does present opportunities for members of a family to color their testimony with interest, bias and exaggeration. Particularly where one's daughter and sister has had pinned upon her breast the scarlet letter, and where the disgrace of the family hearth threateningly impends.

No medical testimony was offered relative to these alleged acts of extreme cruelty and not one disinterested witness appeared for the defendant.

The evidence was not at all satisfying and convincing. The testimony does not reveal very much concern on the part of the defendant with regard to these alleged acts of cruelty until the petitioner charged her with adultery.

No criminal complaint was made against the petitioner as a result of these cruel acts. But the defendant, on November 17th, 1941, did see fit to complain against him for non-support, and he was ordered to pay her $8 a week.

Extreme cruelty is that degree of cruelty, either actually inflicted or reasonably inferred, which endangers the life or health of the aggrieved party, or renders his or her life one of such extreme discomfort and wretchedness as to incapacitate him or her, physically or mentally, from discharging the marital duties. *Smith* v. *Smith*, 40 *N. J. Eq.* 566; 5 *Atl. Rep.* 109; *Taylor* v. *Taylor*, 73 *N. J. Eq.* 745; 70 *Atl. Rep.* 323; *Pfender* v. *Pfender*, 106 *N. J. Eq.* 373; 150 *Atl. Rep.* 832; *Fallon* v. *Fallon*, 111 *N. J. Eq.* 512; 162 *Atl. Rep.* 406;

*Cavileer* v. *Cavileer*, 94 *N. J. Eq.* 160; 119 *Atl. Rep.* 101; *Rosengren* v. *Rosengren*, 115 *N. J. Eq.* 283; 170 *Atl. Rep.* 660; *Bamberg* v. *Bamberg*, 123 *N. J. Eq.* 570; 199 *Atl. Rep.* 54; *Schnatter* v. *Schnatter*, 129 *N. J. Eq.* 373; 19 *Atl. Rep.* (*2d*) 642; *McCabe* v. *McCabe*, 129 *N. J. Eq.* 431; 19 *Atl. Rep.* (*2d*) 687.

The court must be satisfied that the wife is in danger of bodily harm, if she goes back to him. *Close* v. *Close*, 25 *N. J. Eq.* 526, 529; *English* v. *English*, 27 *N. J. Eq.* 579.

There were quarrels and disagreements, and the defendant was nervous and hysterical, as most pregnant women are. But the court is left in a state of grave doubt as to whether or not the petitioner is guilty of these charges of extreme cruelty or that the defendant would be in danger of bodily harm if she returned to the petitioner.

I am of the opinion that the evidence of the defendant and her corroborating witnesses is lacking in that quality and weight sufficient to warrant a decree in her favor and against the petitioner.

The separate defenses based upon the extreme cruelty of the petitioner must fall with the counter-claim. The separate defense of prenuptial intercourse is not only denied by the petitioner but is without any corroboration whatsoever. Therefore, it must fall also.

The motion to dismiss the supplemental petition is denied; the defendant is innocent of the charges alleged in the original petition; the defendant is guilty of the charge alleged in the supplemental petition; the counter-claim is dismissed.

A decree in conformity with the above conclusions may be presented.