PHYLLIS C. JACOBS, Appellant, v. ALLEN JACOBS, Appellee.

(*October* 12, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Bruce M. Stargatt* and *H. Albert Young* (of the firm of Morford, Young and Conaway) for defendant below, appellant.

*Warren Roberts* and *A. James Gallo* for plaintiff below, appellee.

Supreme Court of the State of Delaware, No. 23, 1959.

BRAMHALL, J.:

In this appeal defendant raises three questions: (1) Is the uncorroborated testimony of private detectives sufficient to make out a *prima facie* case of adultery? (2) Is the testimony offered on behalf of plaintiff sufficient to support a finding of adultery?; (3) Is more than a preponderance of evidence required to prove adultery?

In the view we take of this case, we may dispose of this appeal by determining the single question: Is the testimony offered on behalf of plaintiff sufficient to sustain a finding of adultery?

Accepting the plaintiff's testimony, as we must, the following are the substantial facts upon which plaintiff bases his claim for a divorce:

Plaintiff hired the services of a detective agency to investigate his wife's activities. After several unsuccessful efforts on the

part of the agency detective and a friend employed by an investigative retail agency in Philadelphia, these operators were finally successful in picking up defendant and the alleged corespondent outside a hotel owned by defendant's parents on South Broad Street, in the City of Philadelphia, a short time before eight o'clock in the evening of October. 17, 1958. The night was dark. Weather conditions at the time were fair. The operators followed defendant and corespondent in corespondent's automobile to a drive-in theatre at or near South Broad Street and Passayunk Avenue. Operators parked their car behind that of corespondent, one car to the right. Both cars were approximately one-half way between the projector and the refreshment stand, the distance between these two objects being approximately 150 feet. The only lights were at the refreshment stand and they were not a factor. The drivers of both cars turned off their lights. Watching corespondent's car from their own car, operators were able to see corespondent move over to defendant's side of the. car and start a "love match, or they started to embrace one another, kiss one another." After watching them for a few minutes, Operator Stanton walked behind corespondent's car on the driver's side. Looking into corespondent's car, he could observe corespondent on top of defendant. He continued walking, ending up in front of corespondent's car. He then walked very slowly around the front and to the right side of the car. He observed motions of corespondent's body, which he said indicated to him that defendant and corespondent were in the act of committing adultery. He then went back to the car and the other operator followed the same course in the same manner with approximately the same results. Some time thereafter, during the intermission, corespondent got out of the car and came back with refreshments. According to Operator Stanton, defendant and corespondent again went into a similar lying position with defendant's head on the panel door. She was lying down. He could not observe the front of either party. At least two-thirds of corespondent's body was on defendant's. He could not see their feet. He could not see whether defendant's slacks were open or

closed. Corespondent's trousers were up. He had his coat on. Defendant did not have her jacket on. He did not know about defendant's glasses.

The testimony of Operator Bisbing was a little different. He stated that defendant had glasses on when she got into the car; that defendant had on slacks and a long leather sport coat. He did not know whether she had on a sweater. Although he stated that he could see clearly, he could not say whether or not corespondent had his pants down or whether defendant's legs were open or closed or whether her slacks were on or off. He finally said, "the gentleman was lying on top of her, that's all I know."

Both defendant and corespondent denied unequivocally that they committed adultery on that or any other occasion. Defendant testified that plaintiff left her because defendant refused plaintiff's demand that she have an abortion committed upon her. She testified that she had on her glasses because she could not see without them; that she had only one pair of slacks, which opened on the side and tapered at the knee; that the only way in which she could have had sexual intercourse would have been to remove her slacks; she said that she also had on her panties.

There is no evidence of any other meeting between defendant and corespondent.

 Accepting the testimony of the operators, although uncorroborated in any respect, we think that the evidence fails to sustain the charge of adultery. The position of defendant and corespondent and the movement of their bodies, does not, we think, under the circumstances under which it is alleged to have occurred, necessarily create the inference that the act of adultery was being committed. That inference, we think, is something less than adultery. We say this because from the circumstances herein before alluded to it would seem extremely improbable that adultery could have taken place. Indiscretion is not adul-

tery. Supposition is not proof. That an act of adultery might possibly, or even probably have been committed, is not proof that adultery was actually committed. *Parsons v. Parsons,* 197 *Or.* 420, 253 *P.* 2d 914. Where the facts upon which the charge of adultery rest are established, the court must draw from those facts such material and obvious inferences conveyed by them as are consistent with common experience. Where such facts may import innocence as well as guilt, they must be held to import innocence. *Smith v. Smith,* 21 *N. J. Misc.* 273, 33 *A.* 2d 684; *Thiess v. Thiess,* 124 *Md.* 292, 92 *A.* 922. See 27A *C. J. S.* Divorce § 123(4). The fact that the operators concluded that adultery was taking place is merely an assumption and not evidence. They could also have assumed that something less than adultery occurred.

The judgment of the Superior Court will be reversed and judgment entered for defendant.